PEOPLE v DAVIS

Docket No. 65303. Submitted December 6, 1983, at Detroit.—Decided
    April 16, 1984. Leave to appeal applied for.

    John R. Davis was convicted of breaking and entering with intent
    to commit a larceny by a jury in Wayne Circuit Court and was
    sentenced, Harold Hood, J. Defendant appeals. *Held:*

        1. The trial court did not err in allowing the prosecutor to
    impeach defendant with evidence of his prior convictions of
    larceny in a building, and any error which may have occurred
    by the trial court's allowing the use of evidence of defendant's
    prior conviction of conspiracy to tamper with a motor vehicle
    was harmless.

        2. The trial court did not err in denying defendant's motion
    to strike the testimony of police officer witnesses who discussed
    their testimony among themselves during the trial.

        3. Defendant's contention that his arrest in Allen Park by
    the Detroit and Dearborn police was unlawful because they
    were not acting in conjunction with the Allen Park police or
    Michigan State Police and had not entered Allen Park in hot
    pursuit of defendant is rejected. The police officers, acting as
    citizens, had authority to arrest defendant for the commission
    of a felony in their presence.

        4. Defendant's contention that the search of his vehicle
    without a warrant at the police station was unlawful and that
    the trial court erred in denying his motion to suppress the

REFERENCES FOR POINTS IN HEADNOTES
[1] 5 Am Jur 2d, Appeal and Error § 881.
[1-3] 29 Am Jur 2d, Evidence §§ 330, 321, 327.
    81 Am Jur 2d, Witnesses § 569 *et seq.*
[2] 50 Am Jur 2d, Larceny § 153.
[3] 29 Am Jur 2d, Evidence § 253.
[4] 75 Am Jur 2d, Trial §§ 61, 63-65.
    Effect of witness' violation of order of exclusion. 14 ALR3d 16.
[5] 5 Am Jur 2d, Arrest §§ 25, 50.
[6] 68 Am Jur 2d, Searches and Seizures §§ 43, 45, 96, 99.
    Validity, under Federal Constitution, of warrantless search of auto-
        mobile—Supreme Court cases. 26 L Ed 2d 893.
[7] 68 Am Jur 2d, Searches and Seizures § 23.

items seized from the vehicle is unavailing. Even if the search was unlawful, any error in the admission of the items seized was harmless.

5. The surveillance of defendant's vehicle did not constitute a search for which a warrant was required.

Affirmed.

1. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS — RULES OF EVIDENCE.

A trial court's decision to admit or exclude evidence of prior convictions for the purpose of attacking the credibility of a witness will not be disturbed on appeal absent an abuse of discretion (MRE 609[a]).

2. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS — THEFT OFFENSES.

Evidence of prior convictions for theft offenses may be used for purposes of impeachment (MRE 609[a]).

3. CRIMINAL LAW — IMPEACHMENT — PRIOR CONVICTIONS — IDENTICAL OFFENSES.

Evidence of prior convictions for an offense identical to the crime charged may be admitted for purposes of impeachment if the trial court determines that the probative value of the evidence outweighs its prejudicial effect (MRE 609[a]).

4. WITNESSES — SEQUESTRATION — SILENCE DURING SEQUESTRATION.

A sequestration order alone does not automatically put the witnesses on notice that they are not to discuss their testimony; where the trial court is not requested to caution the sequestered witnesses not to discuss the evidence, the sequestration order is not violated by such discussion and the court does not abuse its discretion in permitting the witnesses to testify.

5. ARREST — FELONY — JURISDICTION OF POLICE.

Police officers acting outside their jurisdiction have the authority as citizens, given probable cause, to make an arrest for a felony committed in their presence (MCL 764.16; MSA 28.875).

6. CONSTITUTIONAL LAW — AUTOMOBILES — SEARCHES AND SEIZURES — PROBABLE CAUSE.

Police may, under the Fourth Amendment, conduct a search without a warrant of an automobile at the station house so long as probable cause to search existed at the scene of the arrest and still exists at the time of the search (US Const, Am IV).

7. SEARCHES AND SEIZURES — SURVEILLANCE — AUTOMOBILES.
  Surveillance of an automobile by vision does not constitute a
    search for which a warrant is required (US Const, Am IV;
    Const 1963, art 1, § 11).

*Frank J. Kelley,* Attorney General, *Louis J. Caruso,* Solicitor General, *William L. Cahalan,* Prosecuting Attorney, *Edward Reilly Wilson,* Deputy Chief, Civil and Appeals, and *Rosemary A. Gordon,* Assistant Prosecuting Attorney, for the people.

State Appellate Defender (by *Susan J. Smith),* for defendant on appeal.

Before: T. M. BURNS, P.J., and MACKENZIE and R. ROBINSON,* JJ.

PER CURIAM. Defendant appeals as of right his jury conviction of breaking and entering with intent to commit a larceny, MCL 750.110; MSA 28.305. Defendant raises several issues on appeal, none of which we find require reversal of his conviction.

Having received information that a yellow Camaro had been used as a getaway car in a number of Wayne County breaking and enterings, the Detroit police commenced surveillance of defendant's vehicle, a yellow Camaro. On the fifth day of the surveillance operation, police officers from Detroit and Dearborn followed the vehicle to a residential area in Allen Park where the vehicle slowly cruised up and down some streets before stopping in front of a house. The owner of the house testified that she was away from home at that time. The police officers testified that defendant's brother knocked on the front door and waited for about a minute, went around the side of

---

* Circuit judge, sitting on the Court of Appeals by assignment.

the house to another door, on which he used some type of instrument, and then returned to the vehicle. Defendant and his brother then parked the vehicle farther away from the house and returned on foot. Defendant and his brother were observed walking to the rear of the house, after which various lights in the house became illuminated and the shadows of persons moving about in the house were observed. However, none of the officers actually observed defendant and his brother enter the house. Defendant and his brother were subsequesntly observed walking from the rear of the house to the car, each carrying large objects covered with blankets or sheets. One item was placed in the back seat of the car and other objects were placed in the trunk.

Just after defendant and his brother entered the car, the police officers converged on the car and placed both men under arrest. After the arrest, one of the officers observed that the rear door of the house had been pried open and that some of the contents of the house were in disarray. In response to a radio dispatch, an Allen Park police officer arrived on the scene, and defendant and his brother were transported to the Allen Park lock-up facility. The Camaro was towed to the Allen Park police department's garage, where it was searched. A television set was seized from the back seat of the vehicle, and a movie camera, piggy banks, costume jewelry, wall clock, radio, and another television set were seized from the trunk. These items, which were admitted over defendant's pretrial motion to suppress, were identified by the complainant as property taken from her house.

Defendant testified that he and his brother on the night of the offense were "scabbing", *i.e.,* look-

ing for discarded property left outside of residences in the area. Seeing a "for sale" sign in front of the complainant's home, defendant theorized that unwanted furniture may have been left behind if someone was moving out of the house. His brother knocked on the front door and, not receiving a response, returned to the car. However, while driving away, the men noticed a light go on in the house, and so parked the car and returned on foot. Defendant and his brother knocked on the rear door, a man opened the door, and defendant asked him if he was throwing away the two televisions and other items laying on the ground outside the door. The man responded in the affirmative, and told defendant and his brother they could take the items. After putting the items in the car, defendant and his brother were arrested. There was no evidence corroborating defendant's testimony that a man was inside the house at the time of the offense.

I

Defendant first claims that the court erred in allowing the prosecutor to impeach defendant with evidence of his prior convictions of larceny in a building and conspiracy to tamper with a motor vehicle. A trial court's decision to admit or exclude evidence of prior convictions under MRE 609(a) will not be disturbed on appeal absent an abuse of discretion. *People v Wilson,* 107 Mich App 470, 475; 309 NW2d 584 (1981). The record reflects that the trial court recognized its discretion, and considered and properly applied the factors set forth in *People v Crawford,* 83 Mich App 35; 268 NW2d 275 (1978). Indeed, the trial judge did suppress evidence of defendant's prior conviction for attempted breaking and entering on the ground that

the conviction was too similar to the offense charged and evidence of a prior conviction for felonious assault on the basis that it was not probative of credibility.

We find no abuse of discretion in the court's admission of evidence of defendant's prior conviction for larceny in a building. As a theft offense, the conviction was probative of defendant's credibility. *People v Pedrin,* 130 Mich App 86; 343 NW2d 243 (1983); *People v Jones,* 98 Mich App 421, 432; 296 NW2d 268 (1980). That conviction was only somewhat similar to the charged offense of breaking and entering with intent to commit a larceny, and we cannot say that the court abused its discretion in finding that the probative value of the evidence outweighed its prejudicial effect. Even evidence of prior convictions for an offense identical to the crime charged may be admitted under MRE 609(a). *People v Moss,* 113 Mich App 626, 628; 318 NW2d 501 (1982).

With respect to defendant's prior conviction for conspiracy to tamper with a motor vehicle, defendant argues that tampering with a motor vehicle, MCL 750.416; MSA 28.648, does not necessarily involve an attempt to steal the vehicle since the statute encompasses intentionally damaging a vehicle and that evidence of that conviction was not probative of credibility. The trial judge noted that the conviction was the result of a plea bargain and determined that it involved a crime of theft and therefore that evidence of the conviction was probative of defendant's credibility. The record reflects that defendant's "rap sheet" was presented to the trial judge but does not reflect whether it apprised the judge of some additional facts which indicated that the conviction arose out of a theft or attempted theft. In any event, we find that,

even if admission of evidence of that conviction was error, it was harmless beyond a reasonable doubt in view of the strength of the police testimony relating defendant's activities and the fact that defendant was properly impeached with evidence of another prior conviction. Compare *People v Karam,* 106 Mich App 383, 395-396; 308 NW2d 220 (1981), *lv den* 414 Mich 870 (1982); *People v Mustafa,* 95 Mich App 583, 585-586; 291 NW2d 130 (1980).

## II

Defendant next argues that the trial court abused its discretion in refusing to strike the testimony of sequestered police witnesses who discussed their testimony among themselves during the trial. The record reveals that one officer admitted that, during the lunch break, he discussed with another officer his testimony regarding the route he took while following the Camaro through Allen Park. Another police officer admitted that the officers had conversed about the case during the course of the trial, but that the conversation had not helped his memory. Another officer testified that during the trial the police officers had talked about details of the case but had not discussed their testimony.

Prior to trial, defense counsel stated that it was unnecessary to move for sequestration because all the prosecution witnesses had voluntarily left the courtroom. Thus, although there was no formal sequestration order entered by the court, defendant asserts that we must treat this case as if a sequestration order had been entered based on the prosecution's voluntary sequestering of its witnesses, and the prosecution on appeal does not argue otherwise. Nevertheless, in a previous deci-

sion involving police officers discussing the case during the trial, this Court explained that a sequestration order alone does not automatically put the witnesses on notice that they are not to discuss their testimony and thus held there was no violation of the sequestration order in that case. *People v Stanley,* 71 Mich App 56, 61-62; 246 NW2d 418 (1976). Where the trial court is not requested to caution the sequestered witnesses not to discuss the evidence, the sequestration order is not violated by such discussion, and therefore the court does not abuse its discretion in permitting the witnesses to testify. *People v Linzey,* 112 Mich App 374, 379; 315 NW2d 550 (1981); *People v Stanley, supra.* Likewise, in the present case, defendant did not request the court to caution the police officers not to discuss the case, and there is no indication in the record that the witnesses had been advised by the prosecutor not to discuss the case so that defendant was lulled into believing that such a request was unnecessary. Hence, we conclude that the court did not abuse its discretion in denying defendant's motion to strike the police officers' testimony.

## III

Although defendant does not dispute that there existed probable cause to arrest him, he claims that his arrest in Allen Park by the Detroit and Dearborn surveillance team was unlawful since at that time the latter were not acting in conjunction with the Allen Park police or Michigan State Police, MCL 764.2a; MSA 28.861(1), nor had the surveillance team entered Allen Park in hot pursuit of defendant, MCL 117.34; MSA 5.2114. We

agree that neither of these statutes authorizing police officers to act outside their jurisdiction apply in the present case. However, this Court has recognized that, aside from the above statutes, police officers acting outside their jurisdiction have the authority as citizens under MCL 764.16; MSA 28.875, given probable cause, to make an arrest for a felony committed in their presence. *People v Bashans,* 80 Mich App 702, 713; 265 NW2d 170 (1978). We find *Bashans* to have been correctly decided and decline defendant's invitation to disturb it. Contrary to the citation to *Bashans* as a hot pursuit case in *People v Rowe,* 95 Mich App 204, 211; 289 NW2d 915 (1980), *Bashans* was clearly not a hot pursuit case; the holding in *Bashans* was reached without any finding of hot pursuit or any reference to the hot pursuit statute, MCL 117.34; MSA 5.2114. Nor is *Bashans* factually distinguishable as argued by defendant. The following quotation from *Bashans* shows that, as in the present case, the police followed the defendant into another jurisdiction, where they observed the commission of the offense and then arrested the defendant:

"The officers' surveillance of *the house* that was broken and entered, *to which they followed defendants from their own jurisdiction,* throughout the commission of the crime clearly gave them probable cause to arrest defendants pursuant to MCL 674.16; MSA 28.875." *People v Bashans, supra,* p 713. (Emphasis added.)

Defendant's interpretation of *Bashans* as a case where the offense was committed within the jurisdiction of the police officers, who then followed the defendant to another jurisdiction and arrested him, is erroneous.

IV

Defendant argues that the search of his vehicle without a warrant at the police station was unlawful, and that the trial court erred in denying his motion to suppress the evidence seized from the vehicle. The prosecution argues on appeal, as it did successfully before the trial court, that the search was justified because probable cause to search existed. Defendant does not dispute that probable cause to search existed. Nor does defendant contend that the search was unlawful because it occurred at the station house rather than at the scene of the crime. The United States Supreme Court has held that if the police have probable cause to search an automobile at the scene, they may later conduct the search without a warrant at the station house so long as probable cause still exists at that time. *Texas v White,* 423 US 67; 96 S Ct 304; 36 L Ed 2d 209 (1975); *Chambers v Maroney,* 399 US 42; 90 S Ct 1975; 26 L Ed 2d 419 (1970). Defendant's sole claim is that under our state constitutional protection against unreasonable searches and seizures, Const 1963, art 1, § 11, not only probable cause to search but also exigency is required for a permissible search of an automobile without a warrant, and no exigent circumstances were present in the instant case since the police had taken defendant and his accomplice into custody, had control of the vehicle, and had no reason to suspect that there were any other accomplices at large who might have destroyed evidence or moved the vehicle.

There is no question but that, for purposes of the Fourth Amendment of the federal constitution, probable cause to search the vehicle alone is

enough, and there is no need to assess in each individual case whether exigent circumstances were present. *Michigan v Thomas,* 458 US 259; 102 S Ct 3079; 73 L Ed 2d 750 (1982), *rev'g People v Thomas,* 106 Mich App 601; 308 NW2d 170 (1981); *People v Futrell,* 125 Mich App 568, 572; 336 NW2d 834 (1983). A review of the decisions in our state has revealed no clear indication that, irrespective of United States Supreme Court decisions interpreting the Fourth Amendment, our state constitution provides greater protection. Notably, in the recent case of *People v Julkowski,* 124 Mich App 379, 382-383; 335 NW2d 47 (1983), an automobile search was found lawful based on probable cause alone with no determination that exigent circumstances existed. In any event, even if, for purposes of our state constitution, the search of defendant's automobile was unlawful, despite the existence of probable cause, because no exigent circumstances were present so as to excuse the failure to obtain a warrant, any error in the admission of the items seized was harmless beyond a reasonable doubt. Here, the offense was observed by the police officers as it occurred, and they testified as to defendant's participation. The items seized from defendant's vehicle were not necessary to provide the essential link between the offense and defendant; rather, the police officers' testimony provided a more than ample basis from which the jury could reasonably conclude that defendant committed the offense. Indeed, defendant never disputed his involvement. His defense theory was that a man answered the door at the home and told defendant he could have the items later seized, and suppression of the items seized would not have rendered defendant's theory any more credible to the jury.

## V

Lastly, defendant argues that the five-day surveillance of the yellow Camaro, which the Detroit police commenced based on information that it had been used as a getaway car in previous breaking and enterings, constituted a search for which a warrant was required. In the recent case of *United States v Knotts,* — US —; 103 S Ct 1081; 75 L Ed 2d 55 (1983), the Court held that surveillance of an automobile by use of both a monitoring beeper and vision did not constitute a search under the Fourth Amendment and explained as follows:

"A person travelling in an automobile on public thoroughfares has no reasonable expectation of privacy in his movements from one place to another. When Petschen travelled over the public streets he voluntarily conveyed to anyone who wanted to look the fact that he was traveling over particular roads in a particular direction, the fact of whatever stops he made, and the fact of his final destination when he exited from public roads onto private property." *United States v Knotts, supra,* — US —; 103 S Ct 1085; 75 L Ed 2d 62.

Thus, the police officers' surveillance of the Camaro's comings and goings on public roads by vision alone in the present case did not amount to a search for purposes of the Fourth Amendment of the federal constitution. The "reasonable expectation of privacy" test has likewise been applied to determine whether a search occurred for purposes of our state constitution, Const 1963, art 1, § 11. *E.g., People v Nash,* 418 Mich 196; 341 NW2d 439 (1983) (opinion of BRICKLEY, J.); *People v Brooks,* 405 Mich 225; 274 NW2d 430 (1979); *People v Krontz,* 50 Mich App 495; 213 NW2d 593 (1973). Consequently, we reach the same conclusion, that the surveillance did not constitute a search under Const 1963, art 1, § 11.

Affirmed.